# THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JENNIFER HUMMEL,

on behalf of herself and all others
similarly situated,

     Plaintiff,

v.

TEIJIN AUTOMOTIVE
TECHNOLOGIES, INC.,

     Defendant.

Case No.: 2:23-cv-10341-GAD-JJCG

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Plaintiff, pursuant to LR 7.1(c) and (d), responds in opposition to Defendant's Motion to Dismiss Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 12) and, for the reasons stated below, respectfully requests that the Court deny the motion in its entirety.

1

## **BRIEF**

## **Concise statement of the issues presented**

1.      Whether Plaintiff's negligence claim alleges that Defendant breached a duty to safeguard sensitive personal information.

2.      Whether Plaintiff's breach-of-implied-contract claim alleges the formation of an implied contract to safeguard sensitive personal information and damages arising from Defendant's breach of the implied contract.

      a.  Whether Plaintiff alleges consideration for the implied contract.

      b.  Whether Plaintiff alleges the formation of an implied contract.

      c.  Whether Plaintiff alleges damages proximately resulting from Defendant's breach of the implied contract.

3.      Whether Plaintiff may proceed with her declaratory judgment count as derivative of her substantive claims.

**Controlling or most appropriate authority for the relief sought**

***Authority supporting that Plaintiff has plausibly alleged that Defendant breached a duty to safeguard sensitive personal information***

*Ramirez v. Paradies Shops, LLC*, ___ F.4th ___, 2023 WL 3813881, at *5 (11th Cir. June 5, 2023)

*In re Arthur J. Gallagher Data Breach Litig.*, ___ F. Supp. 3d ___, 2022 WL 4535092 (N.D. Ill. Sept. 28, 2022)

*Smallman v. MGM Resorts Int'l*, ___ F. Supp. 3d. ___, No. 220CV00376GMNEJY, 2022 WL 16636958 (D. Nev. Nov. 2, 2022)

***Authority supporting that Plaintiff has alleged consideration in her breach-of-implied-contract claim***

*See Linman v. Marten Transp.*, Ltd., No. 22-CV-204-JDP, 2023 WL 2562712 (W.D. Wis. Mar. 17, 2023)

*Perry v. Bay & Bay Transportation Servs., Inc.*, No. CV 22-973 (JRT/ECW), 2023 WL 171885 (D. Minn. Jan. 12, 2023)

*Kirsten v. California Pizza Kitchen, Inc.*, No. 221CV09578DOCKES, 2022 WL 16894503, at *5 (C.D. Cal. July 29, 2022)

***Authority supporting that Plaintiff has sufficiently alleged the formation of an implied contract to safeguard sensitive personal information***

*Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016)

*Bowen v. Paxton Media Grp., LLC*, NO. 5:21-CV-00143-GNS, 2022 WL 4110319, at *7 (W.D. Ky. Sept. 8, 2022)

*Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 640-41 (S.D. Ohio Oct. 7, 2020)

***Authority supporting that Plaintiff has sufficiently alleged damages proximately resulting from Defendant's breach of implied contract***

*Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 390 (6th Cir. 2016)

*Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *7 (W.D. Ky. Dec. 1, 2017)

*Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-CV-118, 2017 WL 4987663 (S.D. Ohio Aug. 16, 2017)

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295 (N.D.

Ga. 2019)

***Authority supporting that Plaintiff may proceed with her declaratory judgment count as derivative of her substantive claims***

*Rand v. Travelers Indem. Co.*, No. 21 CV 10744 (VB), 2022 WL 15523722, at *10 (S.D.N.Y. Oct. 27, 2022)

## I.     Introduction

This case arises out of a data breach that occurred on Defendant's network, where it chose to store the unencrypted, sensitive information of more than 25,000 individuals.  The ransomware group that acquired the information then published it on the dark web, including Social Security numbers.  When Defendant notified affected individuals of the data breach, it did not disclose that their PII had been published on the dark web.  Approximately six weeks later, Defendant posted a notice of the data breach that again did not disclose that the sensitive information misappropriated during the data breach had been published on the dark web.

In its Motion to Dismiss, Defendant submits that Plaintiff has not plausibly alleged (i) that Defendant breached a duty in negligence to safeguard PII, (ii) the existence of an implied contract to safeguard the PII, and (iii) that Plaintiff's injuries arising from breach of the implied contract were plausibly caused by the data breach. Defendant also argues that Plaintiff cannot bring her claim for declaratory judgment. For the reasons stated below, Plaintiff respectfully submits that Defendant's Motion to Dismiss should be denied in its entirety.

## II.    Plaintiff's Allegations

According to the operative complaint, Defendant's primary activity, according to its website, is manufacturing highly-engineered products for dynamic market segments.  (ECF No. 10, PageID.99) (¶ 2).  Prior to and through December

6

1, 2022, Defendant collected the information of more than 25,000 individuals, name, address, date of birth, full Social Security number, health insurance policy information (including Subscriber Number and designated insurer) and in a limited number of cases, banking information ("personally identifiable information" or "PII"), and stored that information, unencrypted, in an Internet-accessible environment on Defendant's network.  *Id.* ¶¶ 1, 3-4.

On or before December 1, 2022, Defendant learned of a data breach on its network (the "Data Breach").  *Id.* ¶ 5.  On or around December 13, 2022, Defendant began notifying Plaintiff and Class Members of the Data Breach (the "Notice of Data Breach").  *Id.* ¶ 7.

On or around December 16, 2022, reports began surfacing on the Internet that Defendant had been the subject of a ransomware attack using the "BlackCat/ALPHV" ransomware variant and that information taken during that attack had been listed on the dark web on December 9, 2022. (ECF No. 10, PageID.99-100) (¶ 8).

On or about February 2, 2023, Defendant posted a news article on its website titled "Teijin Automotive Technologies Experiences Ransomware Attack" (the "Website Notice").  (ECF No. 10, PageID.106) (¶ 30).  On or about February 3, 2023, Defendant sent Plaintiff and Class Members an "Important Security Notification" (the "Security Notification").  (ECF No. 10, PageID.107) (¶ 31).  The

Website Notice, and the Security Notification did not disclose that Plaintiff's and other individuals' PII had been listed on the dark web.  (ECF No. 10, PageID.105-08) (¶¶ 28-31).

On December 14, 2022, two days after reports surfaced on the Internet that information taken during the Data Breach had been listed on the dark web, an unknown and unauthorized individual applied for and obtained a $6,000.00 loan with FinWise Bank using Plaintiff's name and other information, including her Social Security number. After and as a result of the Data Breach, Plaintiff incurred approximately $19.80 in postage necessary to send a police report and other information to FinWise Bank.  (ECF No. 10, PageID.122) (¶ 73).

Defendant reported to the U.S. Department of Health and Human Services that the Data Breach impacted 25,464 members of the Teijin Automotive Technologies Welfare Plan.  (ECF No. 10, PageID.125) (¶ 86).

## III.  Argument

### a. Plaintiff's negligence claim plausibly alleges that Defendant breached a duty to safeguard PII.

Defendant argues that Plaintiff was required to allege the "details of the supposedly deficient security."  (ECF No. 12, PageID.165).  As recently as June 5, 2023, the Eleventh Circuit explained in a published opinion why requiring a plaintiff to allege the "exacting" details of a defendant's security measures is unreasonable given the dearth of information that companies share with impacted individuals

8

when a data breach occurs:

> A plaintiff may know only what the company has disclosed in its notice of a data breach. Even if some plaintiffs can find more information about a specific data breach, there are good reasons for a company to keep the details of its security procedures and vulnerabilities private from the public and other cybercriminal groups. ***We cannot expect a plaintiff in Ramirez's position to plead with exacting detail every aspect of Paradies's security history and procedures that might make a data breach foreseeable***, particularly where the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts. Under the circumstances, Ramirez did enough under the *Twombly* and *Iqbal* standard to plead foreseeability.

*Ramirez v. Paradies Shops, LLC*, ___ F.4th ___, 2023 WL 3813881, at *5 (11th Cir. June 5, 2023) (citations and internal quotation marks omitted).  Although the Eleventh Circuit was applying Georgia law, the reasoning equally applies here.

In any event, Plaintiff has sufficiently alleged security measures that Defendant could and should have implemented to protect against the Data Breach. First, Plaintiff alleges as follows regarding the recommendations Defendant could and should have followed to protect against the specific type of ransomware attack underlying the Data Breach, as follows:

- "On or around December 16, 2022, reports began surfacing on the Internet that Defendant had been the subject of a ransomware attack using the "BlackCat/ALPHV" ransomware variant and that information taken during

that attack had been listed on the dark web on December 9, 2022."

- "In April 2022, approximately seven (7) months before the Data Breach, the Federal Bureau of Investigation 'released a Flash report detailing indicators of compromise (IOCs) associated with attacks involving BlackCat/ALPHV, a Ransomware-as-a-Service that has compromised at least 60 entities worldwide.'"

- "The United States Cybersecurity & Infrastructure Agency encouraged users and administrators to review this report 'and apply the recommended mitigations.'"

- "The occurrence of the Data Breach indicates that Defendant did not apply the recommended mitigations prior to the Data Breach."

(ECF No. 10, PageID.99-100) (¶¶ 8-9).

Second, Plaintiff alleges specific security measures that Defendant could and should have taken to prevent and detect ransomware attacks in general and that Defendant failed to implement one or more of these measures.  (ECF No. 10, PageID.113-117) (¶¶ 50-54).  In *In re Arthur J. Gallagher Data Breach Litig.*, ___ F. Supp. 3d ___, 2022 WL 4535092 (N.D. Ill. Sept. 28, 2022), the court, applying Illinois law, found the plaintiffs sufficiently alleged a breach of duty via similar allegations, summarized as alleging that "(1) the United States government recommends certain measures that organizations can take to prevent and detect

ransomware attacks, including awareness and training programs, spam filters, firewalls, anti-virus and anti-malware programs; and (2) Defendants failed to implement "one or more of the above measures to prevent ransomware attacks." *Id.* at *5 (citation to complaint omitted). The court concluded that "[t]his sufficiently identifies the measures Defendants allegedly fell short of implementing, demonstrating that Plaintiffs have sufficiently alleged a breach for purposes of the negligence claim at this pleading stage." *Id.*

Third, Defendant does not address Plaintiff's allegations that Defendant breached its duty to Plaintiff and others by failing to encrypt their Social Security numbers and other sensitive information while electing to store it in an Internet-accessible environment. *See generally* (ECF No.10, PageID.99, 101-02, 109) (¶¶ 4, 11, 35). Plaintiff specifically alleges as follows:

- "Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently … failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use." (ECF No. 10, PageID.102-03) (¶ 16).

- "Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of PII for Plaintiff and Class Members." (ECF No. 10, PageID.109) (¶ 36).

- "Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack." (ECF No. 10,

PageID.112) (¶ 45).

- "Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the PII of Plaintiff and Class Members…."  (ECF No. 10, PageID.117) (¶ 55).

- "….Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII of Plaintiff and the Nationwide Class, including basic encryption techniques freely available to Defendant."  (ECF No. 10, PageID.133) (¶ 108).

Courts have deemed such allegations sufficient to satisfy the breach-of-duty element of a negligence claim in the data breach context.  *See, e.g.*, *Smallman v. MGM Resorts Int'l*, No. 220CV00376GMNEJY, 2022 WL 16636958, at *4 (D. Nev. Nov. 2, 2022) (finding similar allegations sufficiently to state a negligence claim under Nevada law); *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 596 (S.D.N.Y. 2022) (same under New York law).

### b. Plaintiff's breach-of-implied-contract claim plausibly alleges the formation of an implied contract to safeguard PII and damages arising from Defendant's breach of the implied contract.

#### i. Plaintiff alleges consideration for the implied contract.

Plaintiff alleges that she worked for Defendant and provided her PII to Defendant as a condition for and prerequisite to such employment.  (ECF No. 10, PageID.122, 137) (¶¶ 71, 127-29).  For purposes of stating a claim, Plaintiff's labor and PII were adequate consideration provided to Defendant under the implied contract.  *See Linman v. Marten Transp.*, Ltd., No. 22-CV-204-JDP, 2023 WL

2562712 (W.D. Wis. Mar. 17, 2023) (discussing cases where "the plaintiffs provided defendants with valuable consideration—money or *labor*—as part of their express contractual relationship, and the promise to protect plaintiffs' data arose from that contract") (emphasis added); *Perry v. Bay & Bay Transportation Servs., Inc.*, No. CV 22-973 (JRT/ECW), 2023 WL 171885 (D. Minn. Jan. 12, 2023) (finding "[the employer] provided consideration by promising to consider [the plaintiff] for employment, while [the plaintiff] provided consideration by providing valuable property, his [personal information]"); *Kirsten v. California Pizza Kitchen, Inc.*, No. 221CV09578DOCKES, 2022 WL 16894503, at *5 (C.D. Cal. July 29, 2022) (finding consideration where "Plaintiffs and Class Members provided labor and their PII to Defendant in exchange for wages and other employment benefits").

### ii.    Plaintiff alleges the formation of an implied contract.

Defendants cite no authority holding that, under Michigan law, an implied contract to safeguard PII does not arise when employees entrust sensitive information, including Social Security numbers, to an employer as a condition of employment.  Plaintiff submits that the question has not been resolved one way or the other.[1]

---

[1] In *Rakyta v. Munson Healthcare*, 2021 WL 4808339 (Mich. Ct. App. Oct. 14, 2021), a data breach case, the Court of Appeals of Michigan affirmed the dismissal of a patient's implied contract claim against a medical provider for the failure to allege damages.  The court did not analyze whether the plaintiff sufficiently alleged the formation of an implied contract.

Nationwide, courts applying the law of other states are split as to whether an implied contract to safeguard PII arises when an employee entrusts sensitive information, including Social Security numbers, to an employer.  As one court observed in declining to dismiss a breach-of-implied-contract claim in the data breach context, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016).

Several other courts throughout the United States have relied on this reasoning in declining to dismiss an implied contract claim premised on the collection of sensitive information.  *See Miller v. Syracuse Univ.*, No. 521CV1073LEKTWD, 2023 WL 2572937, at *20 (N.D.N.Y. Mar. 20, 2023); *Smallman v. MGM Resorts Int'l*, No. 220CV00376GMNEJY, 2022 WL 16636958, at *9 (D. Nev. Nov. 2, 2022); *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 598 F. Supp. 3d 1145, 1165-66 (D. N.M. 2022);  *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1144 (C.D. Cal. 2021); *In re GE/CBPS Data Breach Litig.*, No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *12 (S.D.N.Y. Aug. 4, 2021); *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *9 (E.D. Mo. Aug. 3, 2021).

Courts within the Sixth Circuit applying Kentucky and Ohio law have similarly found an implied contract sufficiently alleged based on the collection of sensitive information. *See, e.g.*, *Bowen v. Paxton Media Grp., LLC*, NO. 5:21-CV-00143-GNS, 2022 WL 4110319, at *7 (W.D. Ky. Sept. 8, 2022) (applying Kentucky law and finding breach-of-implied contract claim sufficiently alleged based on employer asking employees for their personal information as a condition of employment); *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 640-41 (S.D. Ohio Oct. 7, 2020) (applying Ohio law and finding breach-of-implied contract claim sufficiently alleged based on medical provide requiring personal information in exchange for treatment services and representing it would keep the information secure).

Plaintiff submits that at this early stage of the proceedings, the Court should, "in the interest of caution," conclude that Michigan law can allow for an implied contract to safeguard sensitive information where an employer collects such information from employees as a condition of employment. *See Salas v. Acuity-CHS, LLC*, No. CV 22-317-RGA, 2023 WL 2710180 (D. Del. Mar. 30, 2023) ("As the question appears unsettled [under Delaware law], in the interest of caution, I conclude that [the plaintiff] has sufficiently pled the existence of an implied contract."). After discovery, the factfinder can ultimately determine whether such contract actually existed. *See Castillo*, 2016 WL 9280242, at *9 ("A factfinder can

15

ultimately determine whether an implied contract to protect adequately plaintiffs' information existed, and whether such a contract for adequate protection required protection beyond an employment term.").

### iii. Plaintiff alleges damages proximately resulting from Defendant's breach of the implied contract.

Plaintiff alleges that "[o]n December 14, 2022, two days after reports surfaced on the Internet that information taken during the Data Breach had been listed on the dark web, an unknown and unauthorized individual applied for and obtained a $6,000.00 loan with FinWise Bank using Plaintiff's name and other information, including her Social Security number." (ECF No. 10, PageID.122) (¶ 73). Plaintiff further alleges that her Social Security number was among the PII misappropriated in the Data Breach. (ECF No. 10, PageID.98, 123) (¶¶ 1, 79). Plaintiff also incurred monetary damages in the form of $19.80 she spent on postage necessary to send a police report and other information to FinWise Bank. (ECF No. 10, PageID.122) (¶ 73).

Notwithstanding that the fraudulent activity using Plaintiff's Social Security number occurred *two days* after reports surfaced that the PII taken during the Data Breach had been listed on the dark web, Defendant contends that Plaintiff has not plausibly alleged that the fraudulent activity or her postage expenses are plausibly related to the Data Breach. As one court explained in rejecting a similar argument:

First, the Defendants argue that the Plaintiffs fail to allege

16

that any injuries resulting from identity theft, payment-card fraud, or other similar theories resulted specifically from the Equifax Data Breach, and not some other data breach or fraudulent conduct. According to the Defendants, the Plaintiffs highlight dozens of other security breaches dating to 2013 in the Complaint, and the Defendants assert that over 1,500 data breaches occurred in 2017 alone. Thus, since the Plaintiffs have failed to allege that their injuries resulted directly from their personal information being obtained in this specific Data Breach, their theory of causation is "guesswork at best."

However, the Court finds this argument unpersuasive. *Many of the Plaintiffs have alleged in the Complaint that they suffered some form of identity theft or other fraudulent activity as a result of the Data Breach. Such an allegation is sufficient at the pleading stage to establish that the Data Breach was the proximate cause of this harm.* The Plaintiffs need not explicitly state that other breaches did not cause these alleged injuries, since their allegations that this Data Breach did cause their injuries implies such an allegation. Furthermore, allowing the Defendants "to rely on other data breaches to defeat a causal connection would 'create a perverse incentive for companies: so long as enough data breaches take place, individual companies will never be found liable.'" The Court declines to create such a perverse incentive.

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019).

For purposes of alleging that damages were proximately caused by the Data Breach, it is adequate that Plaintiff alleged her Social Security number was misappropriated and used by a fraudster to obtain a loan within approximately two days of her Social Security number appearing on the dark web. *See Kirsten*, 2022

17

WL 16894503, at *8 ("When plaintiffs plausibly allege that their PII was exposed in a data breach and that they suffered unauthorized access notifications, fraudulent bank activity, and time losses in mitigating such injury, courts have found plausible causation exists between plaintiffs' injury and defendant's failure to safeguard plaintiffs' PII.") (citing *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021)).

Finally, in the standing context, the Sixth Circuit has made clear that allegations of lax security resulting in hackers stealing data are sufficient for purposes of alleging injuries fairly traceable to a defendant's conduct. *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 390 (6th Cir. 2016). District Courts within the Sixth Circuit have similarly observed that "'[g]enerally, to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence.'" *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *7 (W.D. Ky. Dec. 1, 2017) (quoting *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012)); *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-CV-118, 2017 WL 4987663 (S.D. Ohio Aug. 16, 2017) (same). This reasoning equally applies when assessing whether Plaintiff plausibly alleged that her injuries for breach of implied contract were proximately caused by the Data Breach.

    **c. Plaintiff may proceed with the declaratory judgment count because it is derivative of her substantive claims.**

18

Plaintiff recognizes that declaratory judgment is not an independent cause of action.  Nonetheless, as one court has explained in the data breach context:

> although plaintiff styled her claim for declaratory relief as a separate count, that is not fatal to her claim. In Count V, plaintiff incorporates by reference her earlier allegations and refers to the specific substantive provisions under which she is allegedly entitled to declaratory relief. Specifically, plaintiff claims pursuant to the Court's "authority under the Declaratory Judgment Act," it should enter a judgment declaring Travelers "owes a legal duty to secure consumers' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, the NY Shield Act, and the DPPA." (Am. Compl. ¶ 243(a) (emphasis added)). Plaintiff's claim for declaratory relief is thus derivative of her substantive claims and dependent on whether her underlying claims proceed.

*Rand v. Travelers Indem. Co.*, No. 21 CV 10744 (VB), 2022 WL 15523722, at *10 (S.D.N.Y. Oct. 27, 2022).  Plaintiff submits that her declaratory judgment count should not be dismissed to the extent is it derivative of her substantive claims that are allowed to proceed.


Date: June 12, 2023                    Respectfully Submitted,

                                       /s/ Ryan D. Maxey
                                       Michael N. Hanna (P81462)
                                       MORGAN & MORGAN, P.A.
                                       2000 Town Center, Suite 1900
                                       Southfield, MI 48075
                                       (313) 739-1950
                                       mhanna@forthepeople.com

Ryan D. Maxey
**MORGAN & MORGAN COMPLEX
BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
rmaxey@ForThePeople.com

*Attorney for Plaintiff and the Proposed
Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2023, a true and correct copy of the

foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of

the foregoing document will be served upon counsel via transmission of Notices of

Electronic Filing generated by CM/ECF.


/s/ Ryan D. Maxey

20