**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **JENNIFER HUMMEL,** *on behalf of herself and all others similarly situated*, | Case No.: 2:23-cv-10341 |
| Plaintiff, | Judge Paul D. Borman |
| v. | |
| **TEIJIN AUTOMOTIVE TECHNOLOGIES, INC.,** | |
| Defendant. | |

<u>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS**</u>

Representative Plaintiff Jennifer Hummel ("Plaintiff" or "RP"), on behalf of herself and all others similarly situated, seeks the Court's approval of the Class Action Settlement Agreement attached hereto, and submits that the Settlement Class should be preliminarily certified, and the Settlement preliminarily approved as fair, reasonable, and adequate. RP requests the Court enter the order proposed by the Parties directing that the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing. This motion is supported by the Brief contained herein. The Parties have conferred, and Defendant does not oppose the relief requested herein.

1

Dated: March 14, 2024

Respectfully Submitted,

/s___*Ryan D. Maxey*_____

Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
Tel: (313) 739-1950
Email: mhanna@forthepeople.com

Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey
MAXEY LAW FIRM, P.A.
107 N 11th St., #402
Tampa, FL 33602
Tel: (813) 448-1125
Email: ryan@maxeyfirm.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **JENNIFER HUMMEL,** *on behalf of herself and all others similarly situated*, | Case No.: 2:23-cv-10341 |
| Plaintiff, | Judge Paul D. Borman |
| v. | |
| **TEIJIN AUTOMOTIVE TECHNOLOGIES, INC.,** | |
| Defendant. | |

<u>**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT
NOTICE OF PROPOSED SETTLEMENT TO THE CLASS**</u>

i

## **Concise statement of the issues presented**

1.	Whether the Court should preliminarily approve the Parties' proposed class action settlement and enter the order proposed by the Parties directing the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing.

### **Controlling or most appropriate authority for the relief sought**

***Authority supporting that the Court should preliminarily approve the Parties'
proposed class action settlement and enter the order proposed by the Parties
directing the Settlement Class be notified of the proposed settlement in the
manner set forth in the Notice Plan and schedule a Final Approval Hearing***

*Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022)
(Ludington, J.)

## I.   <u>INTRODUCTION</u>

Following hard-fought settlement negotiations, the Parties[1] reached a settlement to resolve claims arising from a Ransomware Attack Teijin announced in December 2022. The settlement creates a non-reversionary common fund of $1,192,280.00 for the benefit of approximately 29,080 class members, including (i) reimbursement for Ordinary Out-of-Pocket Losses, Extraordinary Losses, and Attested Time; (ii) Residual Cash Payments of up to $550; and (iii) Credit Monitoring Services. Subject to Court approval, the Settlement Fund will also pay for a notice and administration program, a service award to RP, and attorneys' fees and expenses. Teijin commits to pay for, implement, and continue certain data-security enhancements and business practices.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. The settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). RP thus moves for an order preliminarily approving the settlement and directing class notice and scheduling a Final Approval Hearing. In support of her motion, RP submits the Settlement Agreement ("Settlement Agreement") (Ex. 1 hereto), which includes a proposed

---

[1] The parties to the settlement are the employee Settlement Class Representative, on behalf of the proposed Settlement Class, and Defendant Teijin Automotive Technologies, Inc. ("Teijin"). Capitalized terms used in this Brief have the same meaning as in the Settlement Agreement ("S.A."), attached hereto as Exhibit 1.

order preliminarily approving the settlement and directing notice that Teijin has approved (Ex. D to the Settlement Agreement); the declaration of proposed co-Class Counsel Ryan D. Maxey ("Maxey Decl.") (Ex. 2 hereto); and the declaration of Jacob Kamenir, Esq. on behalf of the proposed Claims Administrator (Simpluris, Inc. ("Simpluris")), including the Notice Plan ("Kamenir Decl.") (Ex. 3 hereto).

## II.   FACTUAL BACKGROUND

### A. Overview of the Litigation

On or around December 1, 2022, Teijin experienced a Ransomware Attack that impacted some of its IT systems. Teijin's investigation determined that servers accessed by the threat actors contained data pertaining to Teijin's current and former employees' participation in the company's Group Health Plan, which may have included full names and one or more of the following: address, date of birth, full Social Security number, health insurance policy information (including subscriber number or designated insurer) and in a limited number of cases, banking information. On or around December 13, 2022, Teijin announced the Ransomware Attack. On February 8, 2023, RP filed a Class Action Complaint in this Court and later filed an Amended Class Action Complaint (the "Complaint").

In ruling on Teijin's motion to dismiss, the Court dismissed RP's declaratory judgment claim but allowed her claims for negligence and breach of implied contract.  Teijin denies the allegations and the claims made in the Complaint.

2

On November 27, 2023, the parties participated in a full-day mediation facilitated by JAMS mediator John W. Thornton, Retired Judge 11th Judicial Circuit (Fla.). After a full day of arm's length negotiations, the Parties came to an agreement in principle on a $1,192,280.00 Settlement Fund. They negotiated and finalized the Settlement Agreement in March 2024. Attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the settlement, including the payment of the Settlement Fund. Maxey Decl. ¶¶ 19-20.

## B. The Terms of the Proposed Settlement

### 1.    The Settlement Class

The proposed Settlement Class is defined as: all individual U.S. residents to whom Teijin sent notice of the Ransomware Attack. S.A. ¶ 1.28.[2] Teijin represents that the Settlement Class contains approximately 29,080 individuals. *Id.*

### 2.    The Settlement Fund

Teijin will pay $1,192,280.00 into a Settlement Fund for class benefits, notice and administration costs, service award payments approved by the Court, and

---

[2] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Ransomware Attack or who pleads nolo contendere to any such charge. *Id*.

attorneys' fees and expenses award by the Court. *Id.* ¶ 2.1. If there is no final approval of the settlement, any amount remaining in the Settlement Fund will be returned to Teijin. *Id.* ¶ 7.5. Absent a rejection of this proposed settlement by the Court, no proceeds will revert to Teijin for any other reason. *Id.* ¶ 2.1. The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement, and include:

- **<u>Ordinary Out-of-Pocket Losses.</u>** All Settlement Class Members may submit a claim for reimbursement for "Ordinary" Out-of-Pocket Losses up to $500 per individual. S.A. ¶ 2.4. "Ordinary" Out-of-Pocket Losses are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Ransomware Attack that were incurred between December 1, 2022 and the Claims Deadline. *Id.* ¶ 2.4.1.

- **<u>Extraordinary Losses and Attested Time.</u>** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and Attested Time up to $6,500 per individual. S.A. ¶ 2.5. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Ransomware Attack, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. Extraordinary Out-of-Pocket Losses may include, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information. *Id.* ¶ 2.5.1. Settlement Class Members with valid, documented Extraordinary Out-of-Pocket Losses may also submit a claim for up to 10 hours of time spent remedying issues related to the Ransomware Attack at a rate of $30 per hour by providing an attestation and a brief description of: (1) the actions taken in response to the Ransomware Attack; and (2) the time associated with each action ("Attested Time"). *Id.* ¶ 2.5.4.

- **<u>Residual Cash Payment.</u>** In addition to making Claims for Ordinary Out-of-Pocket Losses and/or Claims for Extraordinary Out-of-Pocket Losses

and Attested Time, Settlement Class Members may elect to receive a cash payment of up to $550 on a claims-made basis. *Id.* ¶ 2.7. The amount of the payment will be calculated by dividing the funds remaining in the Settlement Fund after payment of Claims for Ordinary Out-of-Pocket Losses, Claims for Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court by the number of Residual Cash Payment claimants, and thus could be less than $550. *Id.* ¶ 2.7.

- **Credit Monitoring/Identity Theft Protection Services**. Settlement Class Members who submit a claim can elect to enroll in two years of identity theft protection and credit monitoring services under the settlement that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. *Id.* ¶ 2.8. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they submit a Claim for Ordinary Out-of-Pocket Losses, a Claim for Extraordinary Losses and Attested Time, and/or a Claim for a Residual Cash Payment under the settlement. *Id.*

Settlement Class Members seeking any of these benefits must complete and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id*. ¶ 2.9.2. For Claims for Ordinary Out-of-Pocket Losses and Claims for Extraordinary Losses and Attested Time, the claimant must provide documentation supporting their claim (*id*. ¶¶ 2.4.2, 2.5.2).

If the aggregate amount of approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Losses and Attested Time exceeds the remaining amount of the Settlement Fund after payment for costs of Credit Monitoring Services and

Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses, approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. *Id.* ¶ 2.2.

Residual Cash Payments will be increased *pro rata* to a maximum of $550 or increased or decreased *pro rata* to consume the remaining amount of the Settlement Fund after payment for approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses. *Id.* ¶ 2.3.

### 3. Proposed Injunctive Relief—Business Practice Commitments

For a period of 3 years following the execution of a formal settlement agreement, Teijin commits to pay for, implement and continue certain data-security enhancements and business practices. *Id.* ¶ 2.10.

### 4. Proposed Notice and Claims Program

Proposed Class Counsel have retained, and request that the Court appoint, Simpluris as the Claims Administrator to provide notice to Settlement Class Members and to process claims. The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure by giving direct summary postcard notice to the 29,080 Settlement Class Members via

U.S. mail.  Kamenir Decl. ¶ 41. Contact information is available for virtually all Settlement Class members. Moreover, the Long Form Notice will be posted on the Settlement Website, along with other important documents such as the Settlement Agreement, and a toll-free help line will be available to answer Settlement Class Members' questions.  *Id.* ¶ 12.  The individual notice effort alone is likely to reach at least 90% of the Settlement Class (and likely higher). *Id*. ¶ 29. In proposed Class Counsel's experience, and according to Simpluris, the reach of the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement.  *Id.* ¶ 13. The Notice Plan is thus the best notice practicable under the circumstance of this case. *Id*. ¶ 41.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to submit claims electronically on the Settlement Website or by mail. Simpluris, the proposed Claims Administrator, is a widely-regarded expert with the experience and capability to handle a case of this magnitude. *See generally* Kamenir Decl.

## 5. Attorneys' Fees and Expenses and Service Awards

Proposed Class Counsel may request a fee of up to 33.33% percent of the Settlement Fund, or $397,426.66, and reimbursement of litigation expenses in an amount not to exceed $15,000.00 to be paid exclusively from the Settlement Fund.

S.A. ¶ 7.2. Class Counsel may also request a service award of up to $5,000.00 for RP to be paid exclusively from the Settlement Fund. *Id*. ¶ 7.3. Teijin takes no position on these requests.

### 6.    Releases

The Settlement Class will release Teijin from claims that were or could have been asserted in this case. The releases are detailed in the Settlement Agreement. *Id*. ¶¶ 1.23, 1.24, 6.1.

## III.    ARGUMENT

In *Thomsen v. Morley Companies, Inc*., 639 F. Supp. 3d 758 (E.D. Mich. 2022), another data breach case, Judge Ludington thoroughly laid out the criteria for approving a class action settlement in the data breach context before analyzing those criteria and ultimately granting preliminary approval of a class action settlement. RP relies on Judge Ludington's Order throughout this motion as it offers guidance particularly useful in the data breach context, including as follows:

> The claims of "a class proposed to be certified for purposes of settlement[ ] may be settled, voluntarily dismissed, or compromised only with the court's approval."[3]

> The question at the preliminary-approval stage is "simply whether the settlement is fair enough" to begin the class-notice process.[4] At the preliminary-approval stage, Rule

---

[3] *Id*. at 764 (quoting Fed. R. Civ. P. 23(e)).
[4] *Id*. (quoting *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

23(e) requires the parties to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."[5] "The court must direct notice" of a proposed settlement "to all class members who would be bound" by it if "the court will likely be able to approve the proposal under Rule 23(e)(2)[ ] and certify the class for purposes of judgment on the proposal."[6]

After preliminary approval, notice, and time for objections, the proposed settlement may be finally approved "only after a hearing and only on finding that it is fair, reasonable, and adequate."[7]

## A. Rule 23 Class Certification.

### 1. Rule 23(a) requirements.

#### i. Numerosity.

"The Class must be 'so numerous that joinder of all members is impracticable.'" *Id.* at 765 (quoting Fed. R. Civ. P. 23(a)(1)). "Although 'there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement.'" *Id.* (quoting *Daffin v. Ford. Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). The proposed class includes approximately 29,080 individuals. S.A. ¶ 1.28. "This 'sheer' volume satisfies numerosity." *Morley Cos.*, 639 F. Supp. 3d at 765 (quoting *Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015)).

#### ii. Commonality.

---

[5] *Id.* (quoting Fed. R. Civ. P. 23(e)(1)(A)).
[6] *Id.* (quoting Fed. R. Civ. P. 23(e)(1)(B)).
[7] *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

"The Class must share common questions of law or fact." *Id.* (citing Fed. R. Civ. P. 23(a)(2)). "Commonality requires 'a common contention' that, if resolved, would resolve claims of all class members 'in one stroke.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "A common question of law or fact exists if all the Class's members suffered the same injury." *Id.* (citing *Dukes*, 564 U.S. at 349-50). Common to all class members is whether Defendant's data security adequately protected their personal information. *See generally* Complaint. Commonality is satisfied because this issue is capable of class-wide resolution.[8]

### iii. Typicality.

"'[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(3)). "Typicality is satisfied if the representative's claim 'arises from the same [transaction or occurrence as] the claims of other class members, and [they] are based on the same legal theory.'" *Id.* (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). RP's claims arise from the same Ransomware Attack that impacted other class members. *See* Complaint ¶¶ 1-16. Typicality is satisfied

---

[8] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 765 ("Plaintiffs rely on the common question of whether Defendant's data security adequately protected the Class's personal information. This factual question is common to all the members of the Class. Therefore, it is capable of class-wide resolution, satisfying commonality.") (citations omitted).

because resolving RP's claims would also resolve the class members' claims.[9]

### iv.  Adequacy of representation.

"Finally, 'the representative parties [must] fairly and adequately protect the interest of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(4)). "Adequacy is governed by two criteria: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'"[10]

RP's and class members' claims arise from the impact to their PII as a result of the Ransomware Attack. RP actively participated in the case by assisting with the initial and amended complaints and approving the Settlement. Maxey Decl. ¶ 25. The proposed service award does not misalign her interests with those of other class members. These factors satisfy the adequacy requirement.[11]

### 2.  Rule 23(b) requirements.

---

[9] *See, e.g., Morley Cos.*, 639 F. Supp. 3d at 765 ("The claims of Plaintiffs and the Class arise from the same Data Incident and resulted in similar theft of personal information. Thus, resolving one plaintiff's claims would resolve them for the Class, satisfying typicality.").

[10] *Id.* at 765-66 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)).

[11] *See, e.g., Morley Cos.*, 639 F. Supp. 3d at 766 ("The Class satisfies both criteria. Plaintiffs have the same claims as the Class: that their personal information was stolen after Defendant was the victim of a malware attack. Plaintiffs add that they have 'participated actively' in the case. And the proposed lead-plaintiff incentive award does not misalign the interests of Plaintiffs and the Class.") (citations omitted).

"The Class must also satisfy one of the three requirements of Rule 23(b)." *Id.*

(citing *Dukes*, 564 U.S. at 345). "Rule 23(b)(3) … permits class actions if (1) the

common questions of law and fact predominate over any questions affecting only

individuals and (2) the class-action mechanism is superior to the other available

methods for the fair and efficient adjudication of the controversy."[12]

### i.   Common questions of law or fact predominate.

"Predominance is satisfied if the Class's individual questions of law or fact

'are sufficiently cohesive to warrant adjudication by representation.'"[13] RP alleges

that Defendant acted uniformly as to RP and other class members, resulting in the

theft of their personal information and its placement on the dark web. *See* Complaint

¶¶ 1-16. This satisfies the predominance requirement.[14]

### ii.  Class action is the superior method to adjudicate the controversy fairly and effectively.

"Superiority 'is met if the class action is a better way than individual litigation

to adjudicate a claim.'"[15] "A class action is superior if it would 'vindicate[ ] the

---

[12] *Morley Cos.*, 639 F. Supp. 3d at 766 (citing Fed. R. Civ. P. 23(b)(3)).

[13] *Id.* (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)).

[14] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 766 ("Here, the injury of each member of the Class—the theft of personal information—was the result of Defendant's alleged 'uniform' course of conduct. In this way, all the claims of the entire Class involve the same questions of law and fact, satisfying predominance.") (citations omitted).

[15] *Id.* (quoting *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012)).

rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"[16]

It would not be practical for 29,080 individuals to bring separate lawsuits against Defendant with claims arising from the Ransomware Attack. Because a class action is the better method for RP and other class members to vindicate their rights, the superiority requirement is satisfied.[17]

**B. Appointment of Attorneys as Class Counsel.**

"After certifying a class, the court must appoint class counsel." *Morley Cos.*, 639 F. Supp. 3d at 766 (citing Fed. R. Civ. P. 23(g)(1)).

> Before appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the  resources  that counsel will commit to representing the class.

*Id*. (citing Fed. R. Civ. P. 23(g)(1)).

Proposed class counsel have invested many hours investigating the claims in this case. Maxey Decl. ¶ 17. Proposed class counsel also have extensive experience in prosecuting data-breach class actions. *Id*. ¶¶ 3-16. Through that experience,

---

[16] *Id.* (quoting *Amchem*, 521 U.S. at 617).

[17] *See, e.g., id.* ("A class action is the best way to vindicate the Class's rights under these circumstances. Because the data-breach issues predominate, it would be impractical for the members of the Class to individually sue the same defendant for theft of their personal information.") (citations omitted).

proposed class counsel have ample knowledge of the applicable law and the necessary resources. *Id.*. Accordingly, Patrick A. Barthle and Ryan D. Maxey should be appointed as class counsel.[18]

## C. Preliminary Approval of Settlement Agreement.

"There are two steps for approving class settlements: '(1) preliminary approval of the settlement and the content and method of class notice; and (2) final approval after notice and a fairness hearing.'"[19]

"At the preliminary-approval stage, the issue is whether the Agreement 'is fair enough . . . to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections.'"[20] "The Agreement should be preliminarily approved if it '(1) does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and (2) appears to fall within the range of possible approval' at the final-approval stage."[21]

---

[18] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 767 (appointing class counsel who "has invested many hours investigating the claims in this case," "has extensive experience in prosecuting data-breach class actions," and "[t]hrough that experience, he has ample knowledge of the applicable law and the necessary resources").

[19] *Id.* (quoting *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010)).

[20] *Id.* (quoting *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

[21] *Id.* (quoting *Sheick*, 2010 WL 3070130, at *11).

### 1.  Rule 23(e) Factors

Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a proposed settlement is committed to the sound discretion of the court. *See Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019).

> Four factors govern whether the Agreement is 'fair, reasonable, and adequate': (1) whether the class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats class members equitably relative to each other.

*Morley Cos.*, 639 F. Supp. 3d at 767-68.

### i.    Adequate representation.

RP has the same claims as other class members and has actively participated in the case by working with proposed class counsel in preparing the initial complaint and the amended complaint and in approving the Settlement. Maxey Decl. ¶ 25. The proposed service award does not misalign the interests of RP and other class members. Accordingly, the adequate representation requirement is satisfied.[22]

### ii.    Arm's length negotiation of settlement.

---

[22] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 765-66, 768 ("Plaintiffs have the same claims as the Class: that their personal information was stolen after Defendant was the victim of a malware attack. Plaintiffs add that they have 'participated actively' in the case. And the proposed lead-plaintiff incentive award does not misalign the interests of Plaintiffs and the Class.") (citation omitted).

15

The parties mediated this case before a neutral mediator, Judge John Thornton, after Teijin produced information related to (i) when Teijin learned of the Ransomware Attack, (ii) when the Ransomware Attack commenced and ended, (iii) the location of the dataset that contained information related to impacted individuals, (iv) the nature of the relationship(s) between impacted individuals and Teijin, (v) the data elements impacted, (vi) the geographic locations by state of impacted individuals, and (vii) the number of impacted individuals who enrolled in complimentary identity monitoring services that Teijin offered when it provided notice of the Ransomware Attack. Maxey Decl. ¶ 20. This satisfies the requirement that the settlement be negotiated at arm's length.[23]

### iii.   Adequate relief.

> The adequacy of relief considers: (1)  the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed attorney's fee, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(2).

*Morley Cos.*, 639 F. Supp. 3d at 768 (citing Fed. R. Civ. P. 23(e)(2)(C)).

Additional litigation would be complex, costly, and likely continue for several years with no guarantee of relief. Maxey Decl. ¶ 29. A settlement now would allow

---

[23] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 768 ("The parties negotiated the Agreement at arm's length. After conducting informal discovery, the parties settled through a neutral mediator …, and there is no evidence of fraud or collusion. Therefore, the second factor is satisfied.") (citations omitted).

class members to obtain relief without high administrative burdens. *Id.* Class members who do not wish to make a claim requiring documentation can simply "tear off" a claim form from the proposed postcard notice, check boxes indicating whether they want a Residual Cash Payment of up to $550 and/or Credit Monitoring Services, and mail it to the Claims Administrator, with the postage prepaid. S.A. ¶¶ 3.1(f), 3.2.1. Claims requiring documentation may easily be made through the settlement website or by printing and mailing the claim form. The relief sought is adequate.[24]

### iv.   Equal treatment of class members.

"The Agreement must treat the members of the Class as relatively equal." *Id.* Each class member may obtain (i) a Residual Cash Payment of up to $550, (ii) Credit Monitoring Services, and (iii) with supporting documentation, also make a claim for reimbursement of Ordinary Out-of-Pocket Losses and Extraordinary Losses and Attested Time. Finally, a $5,000 service award for RP, who brought this suit while an employee of Defendant, does not raise concerns about inequality.[25]

---

[24] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 768 ("The relief sought is adequate. Plaintiffs acknowledge that more litigation would be complex, costly, and likely continue for several years with no guarantee of relief. The proposed method of distributing relief to the Class, including the processing of its claims, ensures that each member of the Class can obtain relief without high administrative burdens. And the proposed attorney's fees will not exceed 33% of the Settlement Fund, which is adequate.") (citations omitted).

[25] *See, e.g.*, *id.* ("The Agreement must treat the members of the Class as relatively equal. The Agreement does so. It permits each member of the Class to receive the 'automatic benefit' of a three-year extension of identity monitoring. It also provides a form for each member of the Class to obtain 'Claimed Benefits,' including (1) out-

### 2. Sixth Circuit Factors.

[The Sixth Circuit applies] a seven-factor test to assess whether or not a class action settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e). Those factors include: (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest." Of the *UAW* factors, "[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits."[26]

Evaluation of these factors confirms that the proposed settlement is fair, adequate, and reasonable.

### i. The risk of fraud or collusion.

"'Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'"[27] The Court can safely conclude this

---

of-pocket expenses, (2) lost-time claims, (3) California claims, (4) credit monitoring, and (5) password-management services. Such a system ensures the apportionment of relief among class members takes appropriate account of differences among their claims and injuries, thus satisfying equal treatment. And lead Plaintiffs' incentive award is only $1,500.00, so there are no concerns about the incentive award creating inequality.") (citations omitted).

[26] *Déjà vu Servs.*, 925 F.3d at 894-95 (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*") and quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia*, L.L.C., 636 F.3d 235, 245 (6th Cir. 2011)).

[27] *Morley Cos.*, 639 F. Supp. 3d at 769 (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).

settlement was negotiated at arm's length, without collusion, based on the terms of the settlement itself; the length and difficulty of the negotiations; and the involvement of an experienced mediator, retired Judge John Thornton. This factor supports a finding that the Court will likely be able to approve the settlement.[28]

### ii.  The complexity, expense, and likely duration of the litigation.

"Courts must also consider the complexity, expense, and likely duration of litigation because 'the costs, delays[,] and multitudes of other problems' can outweigh the value of the plaintiff's claims." *Id.* RP faces significant risks and costs should she continue to litigate the case due to the potential expense and length of continued proceedings necessary to prosecute the litigation against Teijin through motion practice, trial, and potential appeals. Further, if RP prevailed on her intended motion for class certification and successfully defeated Defendant's intended motions thus proceeding to trial, RP would have faced significant risk, cost, and delay. RP faces the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation.

In contrast to the risks, costs, and delay posed by continued litigation and potential trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class without delay. It ensures that Settlement

---

[28] *See, e.g.*, *id.* ("No evidence of fraud or collusion exists here. On the contrary, the parties settled with a neutral mediator so this factor favors approval.") (citations omitted).

Class Members who submit valid Claims will receive guaranteed benefits now. It also requires injunctive relief that will help protect Class Member data from potential subsequent exposure. The substantial costs, risks, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.[29]

### iii.  The amount of discovery engaged in by the parties.

"A settlement is 'more likely to be fair and reasonable under the circumstances' if the parties have conducted discovery."[30] Although the parties did not engage in formal discovery, "courts have held that settlements are permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case.'"[31]  Prior to mediating, Teijin provided such information.  *See supra* at C.1.ii.[32] Moreover, RP's counsel retained an expert to search for evidence that information exfiltrated during the Ransomware Attack was available on the dark web. Maxey Decl. ¶¶ 17.

---

[29] *See, e.g.*, *id.* ("Plaintiffs acknowledge that continued litigation would be complex, costly, and likely continue for several years with no guarantee of relief. So this factor also favors approval.") (citation omitted).

[30] *Id.* at 769 (citing *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022)).

[31] *Déjà Vu Servs.*, 925 F.3d at 898 (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)).

[32] *See also, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 770 ("Although the parties did not conduct formal discovery, they have conducted ample informal discovery for Plaintiffs to 'adequately assess their case and the desirability of the proposed settlement....' This factor thus favors approval.") (quoting *Kritzer v. Safelite Sols.*, LLC, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012)).

### iv.  The likelihood of success on the merits.

"The likelihood of success on the merits 'provides a gauge from which the benefits of the settlement must be measured.'"[33] This case faces substantial hurdles should it continue to trial. RP would need to obtain class certification and survive any dispositive motions Defendant might file.[34]

### v.  The opinions of class counsel and class representatives.

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'"[35] Proposed class counsel supports the settlement, Maxey Decl. ¶¶27-32, which "favors approval too."[36]

### vi.  The reaction of absent class members.

"This factor is neutral because the proposed settlement is in the prenotice stage."[37]

### vii.  The public interest.

---

[33] *Morley Cos.*, 639 F. Supp. 3d at 770 (citing *Poplar Creek Dev. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011).

[34] *See, e.g.*, *id.* ("Plaintiffs have acknowledged the risk of continued litigation, especially the 'substantial hurdles' for data-breach cases at the pleadings stage. Therefore, this factor favors approval.").

[35] *Id.* (quoting *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)).

[36] *Morley Cos.*, 639 F. Supp. 3d at 770.

[37] *Id.* (citing *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022)).

"'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable' and settlement conserves judicial resources.'"[38] The public interest and judicial resources would be served by via relief for the 29,080-person class.[39]

## D. Approval of proposed notice plan.

"After preliminarily approving a settlement, the court must direct notice of the proposed settlement to all class members who would be bound by the proposal." *Id.* (citing Fed. R. Civ. P. 23(e)(1)(B)). Where a class "is being certified under Rule 23(b)(3), notice must be 'the best notice practicable' and include 'individual notice to all members who can be identified through reasonable effort.'" *Id.* (quoting Fed. R. Civ. P. 23(c)(2)(B)).

> Notice must also include the following in "plain, easily understood language": (1) The nature of the action; (2) The definition of the class certified; (3) The class claims, issues, or defenses; (4) That a class member may enter an appearance through an attorney if the member so desires; (5) That the court will exclude from the class any member who requests exclusion; (6) The time and manner for requesting exclusion; and (7) The binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)).

---

[38] *Id.* (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).

[39] *See, e.g.*, *id*. ("Settling this 694,679-person class action would further the public interest by providing relief for the entire Class and conserving judicial resources. Therefore, this factor favors approval.").

RP has selected, and Defendant has approved, Simpluris as the Claims Administrator. S.A. ¶ 1.5. The proposed notice program provides that a Short Form Notice, with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, shall be mailed to all Settlement Class Members. *Id.* ¶ 3.2.1. The Claims Administrator shall mail a copy of the Short Form Notice via United States Postal Services ("USPS") first class mail to all Settlement Class Members for whom Teijin can ascertain a mailing address from its records with reasonable effort. *Id.* For Settlement Class Members for whom Teijin is not able to ascertain a mailing address from its records with reasonable effort, the Claims Administrator shall use reasonable efforts to identify a mailing address and mail a copy of the Short Form Notice to such address. *Id.* For any Short Form Notices that are returned undeliverable, the Claims Administrator shall use reasonable efforts to identify updated mailing addresses and resend the Short Form Notice to the extent feasible. *Id.* The Claims Administrator shall email a copy of the Short Form Notice to all Settlement Class Members for whom Teijin can ascertain an email address from its records with reasonable effort. *Id.*

The text of the Short Form Notice (i) states that a proposed settlement has been reached in a class action lawsuit arising from the Ransomware Attack, (ii) defines the class as "individual U.S. residents to whom Teijin sent notice of the Ransomware Attack on or about December 13, 2022," (iii) explains that the claims

in the lawsuit relate to the Ransomware Attack and identifies the relief available to Settlement Class Members, (iv) advises that "Other Options" include exclusion from the Settlement or objecting to the it, and (v) advises that Settlement Class Members who do not exclude themselves from the Settlement will give up their right to sue Teijin for the claims that the Settlement resolves. S.A. Ex. B.  Although the deadlines to make a claim, request exclusion, and object are blank, they have placeholders for this information to be filled in following preliminarily approval. *Id.*

In addition to mailing the Short Form Notice to Settlement Class Members, the Claims Administrator shall also post a Long Form Notice on the Settlement Website. *Id.* ¶ 3.2.2. RP submits that the notice program satisfies the requirements of Rule 23 and due process and should be approved.[40]

## E. Timeline of Settlement Events

For the Court's convenience, RP proposes the following dates and deadlines leading to a final approval hearing.

| ACTION | DATE |
|---|---|
| Defendant Provides Class Member List | Within 7 days of an order directing class notice |
| Class Notice Date | 30 days after entry by the Court of the Preliminary Approval Order |

---

[40] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 771 (finding text of similar notice "satisfie[d] the requirements of Rule 23 and due process").

| Completion of Notice Program | 60 days after entry of the Preliminary Approval Order |
|---|---|
| Motion for Attorneys' Fees, Expenses, and Service Awards to RP | 14 days prior to the Objection Deadline |
| Exclusion / Opt-Out Deadline | 60 days from the Class Notice Date |
| Objection Deadline | 60 days from the Class Notice Date |
| Deadline to Submit Claims | 90 days after the Class Notice Date |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | (To be scheduled no earlier than 150 days after entry of Preliminary Approval Order) |

## IV.   CONCLUSION

For the reasons set forth set forth above, RP requests the Court enter the order proposed by the Parties directing the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing.

Dated: March 14, 2024

Respectfully Submitted,

/s   *Ryan D. Maxey*
Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
Tel: (313) 739-1950
Email: mhanna@forthepeople.com

Patrick A. Barthle II

25

Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey
MAXEY LAW FIRM, P.A.
107 N 11th St., #402
Tampa, FL 33602
Tel: (813) 448-1125
Email: ryan@maxeyfirm.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2024, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which will send

notice of electronic filing to all counsel of record.

/s/ *Ryan D. Maxey*
Ryan D. Maxey