## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| **JENNIFER HUMMEL,** *on behalf of herself and all others similarly situated*, | Case No.: 2:23-cv-10341 |
| Plaintiff, | Judge Matthew F. Leitman |
| v. | |
| **TEIJIN AUTOMOTIVE TECHNOLOGIES, INC.,** | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Representative Plaintiff Jennifer Hummel ("Plaintiff" or "RP"), on behalf of herself and all others similarly situated, moves for entry of an order granting final approval of this proposed class action settlement and certifying the settlement class. For the reasons set forth below, RP respectfully requests that the Court, after the final approval hearing scheduled for September 23, 2024, grant this motion, grant Plaintiff's Amended Motion for Service Award, Award of Attorneys' Fees, and Expenses, and enter a final judgment dismissing this case.  This motion is supported by the Brief contained herein. The Parties have conferred, and Defendant does not oppose the relief requested herein.

1

Dated: September 2, 2024

Respectfully Submitted,

/s     *Ryan D. Maxey*

Michael N. Hanna (P81462)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
Tel: (313) 739-1950
Email: mhanna@forthepeople.com

Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey
MAXEY LAW FIRM, P.A.
107 N 11th St., #402
Tampa, FL 33602
Tel: (813) 448-1125
Email: ryan@maxeyfirm.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **JENNIFER HUMMEL,** *on behalf of herself and all others similarly situated*, | Case No.: 2:23-cv-10341 |
| Plaintiff, | Judge Matthew F. Leitman |
| v. | |
| **TEIJIN AUTOMOTIVE TECHNOLOGIES, INC.,** | |
| Defendant. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION
OF SETTLEMENT CLASS**

i

## <u>Concise statement of the issues presented</u>

1.     Whether the Court should finally approve the Parties' proposed class action settlement and enter the order proposed by the Parties certifying the settlement class.

## **Controlling or most appropriate authority for the relief sought**

***Authority supporting that the Court should finally approve the Parties' proposed class action settlement and enter the order proposed by the Parties certifying the settlement class***

*Hummel v. Teijin Automotive Techs., Inc.*, No. 23-cv-10341, ECF No. 26 (E.D. Mich. Apr. 2, 2024) (Borman, J.) (Order Granting Preliminary Approval)

*Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022) (Ludington, J.) (Order Granting Preliminary Approval)

*Thomsen v. Morley Companies, Inc.*, 2023 WL 3437802 (E.D. Mich. May 12, 2023) (Ludington, J.) (Order Granting Final Approval)

## I.   <u>**INTRODUCTION**</u>

Following hard-fought settlement negotiations, the Parties[1] reached a settlement to resolve claims arising from a Ransomware Attack Teijin announced in December 2022. The settlement creates a non-reversionary common fund of $1,192,280.00 for the benefit of approximately 29,080 class members, including (i) reimbursement for Ordinary Out-of-Pocket Losses, Extraordinary Losses, and Attested Time; (ii) Residual Cash Payments of up to $550; and (iii) Credit Monitoring Services.  Subject to Court approval, the Settlement Fund will also pay for the notice and administration program, a service award to RP, and attorneys' fees and expenses. Teijin commits to pay for, implement, and continue certain data-security enhancements and business practices.

The Claims Administrator has determined that 2,798 time and valid claims were submitted.  This is a claims rate of **<u>10.12%</u>** against 27,645 Settlement Class Members.  Of the 2,798 timely and valid claims, the vast majority were 2,685 claims for a Residual Cash Payment.  The payment to each Residual Cash Payment claimant is estimated at **<u>$263.33</u>**, an exceptional result in a data breach case.

The settlement is a favorable result for the Settlement Class, securing valuable

---

[1] The parties to the settlement are the employee Settlement Class Representative, on behalf of the proposed Settlement Class, and Defendant Teijin Automotive Technologies, Inc. ("Teijin"). Capitalized terms used in this Brief have the same meaning as in the Settlement Agreement ("S.A.") (ECF No. 25-1).

benefits tailored to the facts of the case. The settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). RP thus moves for an order finally approving the settlement and directing class notice and certifying the settlement class. In support of her motion, RP submits the declaration of co-Class Counsel Ryan D. Maxey ("Maxey Decl.") (Ex. 1 hereto); and the declaration of Chistopher Leung on behalf of the Claims Administrator (Simpluris, Inc. ("Simpluris")) ("Leung Decl.") (Ex. 2 hereto).[2]

## II.    <u>FACTUAL BACKGROUND</u>

### A. Overview of the Litigation

On or around December 1, 2022, Teijin experienced a Ransomware Attack that impacted some of its IT systems. Teijin's investigation determined that servers accessed by the threat actors contained data pertaining to Teijin's current and former employees' participation in the company's Group Health Plan, which may have included full names and one or more of the following: address, date of birth, full Social Security number, health insurance policy information (including subscriber number or designated insurer) and in a limited number of cases, banking information. On or around December 13, 2022, Teijin announced the Ransomware Attack. On February 8, 2023, RP filed a Class Action Complaint in this Court and

---

[2] The Claims Administrator has not yet provided the executed declaration.  RP has requested it and will promptly file it with the Court once the Claims Administrator provides it.

later filed an Amended Class Action Complaint (the "Complaint").

In ruling on Teijin's motion to dismiss, the Court dismissed RP's declaratory judgment claim but allowed her claims for negligence and breach of implied contract. Teijin denies the allegations and the claims made in the Complaint.

On November 27, 2023, the parties participated in a full-day mediation facilitated by JAMS mediator John W. Thornton, Retired Judge 11th Judicial Circuit (Fla.). After a full day of arm's length negotiations, the Parties came to an agreement in principle on a $1,192,280.00 Settlement Fund. They negotiated and finalized the Settlement Agreement in March 2024. Attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the settlement, including the payment of the Settlement Fund. Maxey Decl. ¶¶ 2-3.

**B. The Terms of the Proposed Settlement**

**1.    The Settlement Class**

The proposed Settlement Class is defined as: all individual U.S. residents to whom Teijin sent notice of the Ransomware Attack. S.A. ¶ 1.28.[3] Teijin represents

---

[3] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Ransomware Attack or who pleads nolo contendere to any such charge. *Id.*

3

that the Settlement Class contains approximately 29,080 individuals. *Id.*

## 2.    The Settlement Fund

Teijin has paid $1,192,280.00 into a Settlement Fund for class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court. *Id.* ¶ 2.1. If there is no final approval of the settlement, any amount remaining in the Settlement Fund will be returned to Teijin. *Id.* ¶ 7.5. Absent a rejection of this proposed settlement by the Court, no proceeds will revert to Teijin for any other reason. *Id.* ¶ 2.1. The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement, and include:

- **Ordinary Out-of-Pocket Losses.** All Settlement Class Members may submit a claim for reimbursement for "Ordinary" Out-of-Pocket Losses up to $500 per individual. S.A. ¶ 2.4. "Ordinary" Out-of-Pocket Losses are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Ransomware Attack that were incurred between December 1, 2022 and the Claims Deadline. *Id.* ¶ 2.4.1.

- **Extraordinary Losses and Attested Time.** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and Attested Time up to $6,500 per individual. S.A. ¶ 2.5. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Ransomware Attack, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. Extraordinary Out-of-Pocket Losses may include, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information. *Id.* ¶ 2.5.1. Settlement Class Members with valid, documented

4

Extraordinary Out-of-Pocket Losses may also submit a claim for up to 10 hours of time spent remedying issues related to the Ransomware Attack at a rate of $30 per hour by providing an attestation and a brief description of: (1) the actions taken in response to the Ransomware Attack; and (2) the time associated with each action ("Attested Time"). *Id.* ¶ 2.5.4.

- **Residual Cash Payment.** In addition to making Claims for Ordinary Out-of-Pocket Losses and/or Claims for Extraordinary Out-of-Pocket Losses and Attested Time, Settlement Class Members may elect to receive a cash payment of up to $550 on a claims-made basis. *Id.* ¶ 2.7. The amount of the payment will be calculated by dividing the funds remaining in the Settlement Fund after payment of Claims for Ordinary Out-of-Pocket Losses, Claims for Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court by the number of Residual Cash Payment claimants, and thus could be less than $550. *Id.* ¶ 2.7.

- **Credit Monitoring/Identity Theft Protection Services**. Settlement Class Members who submit a claim can elect to enroll in two years of identity theft protection and credit monitoring services under the settlement that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. *Id.* ¶ 2.8. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they submit a Claim for Ordinary Out-of-Pocket Losses, a Claim for Extraordinary Losses and Attested Time, and/or a Claim for a Residual Cash Payment under the settlement. *Id.*

If the aggregate amount of approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Losses and Attested Time exceeds the remaining amount of the Settlement Fund after payment for costs of Credit Monitoring Services and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses, approved Claims for Ordinary Out-of-Pocket Losses

and Extraordinary Out-of-Pocket Losses and Attested Time will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. *Id.* ¶ 2.2.

Residual Cash Payments will be increased pro rata to a maximum of $550 or increased or decreased pro rata to consume the remaining amount of the Settlement Fund after payment for approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses. *Id.* ¶ 2.3.

### 3.   Proposed Injunctive Relief—Business Practice Commitments

For a period of 3 years following the execution of a formal settlement agreement, Teijin commits to pay for, implement and continue certain data-security enhancements and business practices. *Id.* ¶ 2.10.

### 4.   Preliminary Approval, Notice, Objections and Exclusions, and Approved Claims.

#### a.  Preliminary Approval.

On March 14, 2024, Plaintiffs moved the Court to grant preliminary approval of the Settlement, approve the proposed Notice Plan, direct notice be given to the Settlement Class, and Schedule a Final Approval Hearing. (ECF No. 25). On April 2, 2024, the Court granted Plaintiffs' motion. (ECF No. 26).

#### b.  Notice.

Pursuant to the Preliminary Approval Order, the Settlement Administrator

implemented the Notice Plan, disseminating notices to 27,645 potential members of the Settlement Class via U.S. mail. See Leung Decl. ¶ 6. Notice was also provided via an internet website. *Id.* ¶ 7.

The Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Teijin; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. (ECF No. 25-1, PageID.348-58).

### c. Objections and Exclusions.

The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on July 1, 2024, (ECF No. 26, PageID.436), and no exclusion requests and no objections have been received to date. Leung Decl. ¶¶ 11-12.

### d. Approved Claims.

The claim deadline was July 31, 2024, and approximately 2,798 timely and valid claims have been received to date. *Id.* ¶ 10.  The approved claims received to date include (i) 2,685 claims for a Residual Cash Payment, (ii) one (1) claim for reimbursement of ordinary out-of-pocket expenses, including attested time, totaling

$29.70, (iii) one (1) claim for reimbursement of extraordinary out-of-pocket expenses totaling $300.00, and (iv) 467 claims for Credit Monitoring and Identity Theft Protection Services.  *Id.* ¶ 10If the Court (i) grants RP's request to award $2,500 to RP, $397,386.92 in reasonable attorneys' fees, and $3,541.83 in litigation expenses and (ii) approves $81,456.39[4] for the costs of notice and administration, $707,394.86 of the $1,192,280.00 Settlement Fund would remain for payments to Class Members.  After paying $29.70 for claims for ordinary out-of-pocket expenses and $300.00 for claims for extraordinary out-of-pocket expenses, $707,065.16 would remain to satisfy claims for a Residual Cash Payment.  Dividing this amount equally among the 2,685 Residual Cash Payment claimants would result in a payment of **$263.33** to each claimant, an exceptional result in a data breach case.

As discussed in Plaintiff's Amended Motion for Service Award, Attorney's Fees, and Expenses (ECF No. 28), the "common fund" settlement obtained for RP and Settlement Class Members is an exemplary result for a data breach settlement, particularly a cyberattack case with no statutory damages at issue. Below are example orders within the Sixth Circuit granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, none of

---

[4] The Settlement Administrator has incurred $34,123.85 in costs of notice and administration through August 30, 2024, and estimates future costs of the completion of the administration, including obtaining credit monitoring codes, at $47,332.54, making the estimated total cost to complete administration $81,456.39. Leung Decl. ¶ 13.

which achieves the **$43.12** per Settlement Class Member achieved in this action:

- $24.58 per class member: *Lochridge v. Quality Temp. Servs., Inc.*, No. 4:22-CV-12086, 2024 WL 1099909 (E.D. Mich. Mar. 13, 2024) (granting preliminary approval) ($2,000,000 fund for approximately 81,355 individuals)[5]

- $10.03 per class member: *In re CorrectCare Data Breach Litig.*, No. CV 5:22-319-DCR, 2024 WL 1403075 (E.D. Ky. Apr. 1, 2024) (denying preliminary approval motion without prejudice), *preliminary approval granted after further information submitted*, 2024 WL 1854711 (E.D. Ky. Apr. 29, 2024) ($6,490,000 fund for 646,701 class members).

- $6.18 per class member: *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022) (granting preliminary approval) ($4,300,000 fund for 694,679 class members)[6]

- $4.32 per class member: *In re Wright & Fillipis, LLC Data Security*

---

[5] The fund amount and class size are not stated in the order but were posted on the settlement website.  *See* https://www.qualifiedstaffingdatasettlement.com/faq (last visited June 6, 2024).

[6] The class size is stated in the order; the fund amount, which is not, was stated in the motion for final approval.  *See* 1:22-cv-10271-TLL-PTM (ECF No. 31, PageID.2110).

*Incident Litig.*, No. 2:22-cv-12908-SFC, 2024 WL 3083436 (E.D. Mich. June 20, 2024) (granting final approval) ($2.9 million fund for approximately 670,763 individuals)[7]

- $2.88 per class member: *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) (granting final approval)[8]

The result here far exceeds any of these comparators.

The well-above-average and still increasing claims rate of **10.12%** as of August 30, 2024 further confirms the quality of the result obtained for the class. Courts throughout the country have found far lower claims rates sufficient in the data breach context, including as follows:

- *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2024 WL 1557366, at *17 (E.D. Pa. Apr. 9, 2024) (explaining that a 2.56% claims rate "[a]t first glance … appears to be … extremely low [but] actually compares favorably to the claims rates in other data breach class actions") (collecting cases);

- *In re C.R. England, Inc.*, No. 2:22-CV-374-DAK-JCB, 2024 WL 1157398, at *3 (D. Utah Mar. 18, 2024) (3.6% claims rate);

- *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (finding 1.6% claims rate "in line with claims rates in other data breach class action

---

[7] The class size and fund amount are stated in the motion for final approval. *See* 2:22-cv-12908-SFC-EAS (ECF No. 47, PageID.2710).

[8] This action involved credit cards, not Social Security numbers.

settlements that courts have approved") (collecting cases);

- *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023) (finding 0.66% claims rate "within the acceptable range for final approval");

- *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions.").

- *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (0.83% claims rate);

- *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claims rate);

- *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), aff'd, 892 F.3d 968 (8th Cir. 2018) (0.23% claims rate)).

## III.   ARGUMENT

In *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022), another data breach case, Judge Ludington thoroughly laid out the criteria for preliminarily approving a class action settlement in the data breach context before analyzing those criteria and ultimately granting preliminary approval of a class action settlement, including as follows:

> The claims of "a class proposed to be certified for purposes of settlement[ ] may be settled, voluntarily dismissed, or compromised only with the court's approval."[9]

The question at the preliminary-approval stage is "simply

---

[9] *Id*. at 764 (quoting Fed. R. Civ. P. 23(e)).

11

whether the settlement is fair enough" to begin the class-notice process.[10]  At the preliminary-approval stage, Rule 23(e) requires the parties to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."[11]  "The court must direct notice" of a proposed settlement "to all class members who would be bound" by it if "the court will likely be able to approve the proposal under Rule 23(e)(2)[ ] and certify the class for purposes of judgment on the proposal."[12]

After preliminary approval, notice, and time for objections, the proposed settlement may be finally approved "only after a hearing and only on finding that it is fair, reasonable, and adequate."[13]

At final approval, Judge Ludington explained that "[a]fter preliminary approval, notice, and time for objections, the proposed settlement may be finally approved 'only after a hearing and only on finding that it is fair, reasonable, and adequate' based on the review of seven factors."  2023 WL 3437802, at *1 (E.D. Mich. May 12, 2023) (citing Fed. R. Civ. P. 23(e)(2)).  Finding that it had "already determined that all but one factor [for final approval] have been satisfied," the Court deemed it necessary only to "determine whether the reaction of absent class members warrants approval of the Agreement."  *Id.* (citing 2022 WL 16708240).

Given the reassignment of this case after preliminary approval was granted,

---

[10] *Id*. (quoting *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

[11] *Id*. (quoting Fed. R. Civ. P. 23(e)(1)(A)).

[12] *Id*. (quoting Fed. R. Civ. P. 23(e)(1)(B)).

[13] *Id*. (quoting Fed. R. Civ. P. 23(e)(2)).

RP recounts Judge Borman's findings in the Preliminary Approval Order (EFC No. 26) in addition to explaining why the reaction of absent class members also warrants final approval.

## A. Rule 23 Class Certification.

> "Rule 23(a) states four prerequisites for establishing a class action class:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4) the representative parties will fairly and adequately protect the interests of the class."

Preliminary Approval Order (ECF No. 26, PageID.409) (citing Fed. R. Civ. P. Rule 23(a)).

### 1. Rule 23(a) requirements.

#### i. Numerosity.

In the Preliminary Approval Order, the Court concluded that (i) "[t]he Settlement Class includes approximately 29,080 people" and (ii) "[t]his is a substantial number for which joinder would be impracticable; therefore, numerosity is met." *Id.* at 410 (citations omitted). After RP filed the preliminary approval motion, the class list was provided to the Settlement Administrator, which "de-duplicated" the class list and determined that there were 27,645 unique individuals

13

therein.  Notwithstanding this slight reduction in size of the Settlement Class, joinder would be impracticable and numerosity is met.

### ii.  Commonality.

In the Preliminary Approval Order, the Court concluded that (i) "[t]he Settlement Class shares the common question of 'whether Defendant's data security adequately protected their personal information'" and (ii) "[t]his common question satisfies commonality."  *Id.* at 411.  Nothing has occurred in the interim to disturb this conclusion.

### iii.  Typicality.

In the Preliminary Approval Order, the Court concluded that (i) "the claims of the Representative Plaintiff arose from the same data-breach incident that impacted all the Settlement Class Members" and (ii) "Representative Plaintiff's claims are typical of and arise from the same operative facts and as the claims off the Settlement Class Members, and typicality is met."  *Id.*  Nothing has occurred in the interim to disturb this conclusion.

### iv.  Adequacy of representation.

In the Preliminary Approval Order, the Court concluded that (i) "the Representative Plaintiff's claims and the Class Members' claims arise from the same data-breach incident," (i) "[t]he Representative Plaintiff also actively participated in the case by 'communicating with the attorneys working on the case during

subsequent phases of the case, including assisting with the initial and amended complaints and approving the settlement," (iii) "the proposed lead-plaintiff incentive award of up to $5,000 'does not misalign the interests of Plaintiff[] and the Class' and (iv) "Representative Plaintiff will fairly and adequately protect the interests of the Settlement Class as the Representative Plaintiff has no interests antagonistic to or in conflict with the Settlement Class and has retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class." *Id.* at 412-13 (citations and internal quotation marks omitted). Nothing has occurred in the interim to disturb this conclusion.

### 2. Rule 23(b) requirements.

"In addition to the Rule 23(a) requirements, the Settlement Class must also satisfy one of the three Rule 23(b) class-type requirements." *Id.* at 413 (citing Fed. R. Civ. P. 23(b)).

### i. Common questions of law or fact predominate.

In the Preliminary Approval Order, the Court concluded that (i) "Plaintiff alleges that Defendant safeguarded the personal identifiable information of all of the Class Members in a uniform manner" and (ii) "[t]herefore, the common question of whether Defendant adequately safeguarded this information predominates over this case." *Id.* at 414 (citations omitted). Nothing has occurred in the interim to disturb this conclusion.

15

### ii. Class action is the superior method to adjudicate the controversy fairly and effectively.

In the Preliminary Approval Order, the Court concluded that "a class action is superior because it would be impractical for each of the approximately 29,080 individual members of the Settlement Class to independently sue Defendant for this same data-breach incident." *Id.* (citation omitted). Nothing has occurred in the interim to disturb this conclusion.

### 3. Rule 23(e) Factors

"To determine whether a Settlement Agreement is 'fair, reasonable, and adequate' courts consider four factors outlined in the Federal Rules of Civil Procedure:

> (A)   the class representatives and class counsel have adequately represented the class,
>
> (B)   the proposal was negotiated at arm's length,
>
> (C)   the relief provided for the class is adequate; []
>
> (D)   the proposal treats class members equitably relative to each other.

*Id.* at 417 (citing Fed. R. Civ. P. 23(e)(2)).

### i.   Adequate representation.

In the Preliminary Approval Order, the Court concluded that "[a]s discussed [previously in the Order], Representative Plaintiff and Class Counsel adequately represent the class, so this factor is met." *Id.* (citation omitted). Nothing has

16

occurred in the interim to disturb this conclusion.

### ii.    Arm's length negotiation of settlement.

In the Preliminary Approval Order, the Court concluded that (i) "[t]he Settlement Agreement was negotiated at arm's length in front of neutral mediator Judge John W. Thornton III on November 27, 2023," (ii) "[t]he Settlement Agreement was further negotiated and finalized in March 2024," and (iii) "[t]here is no evidence of any fraud or collusion in these negotiations; therefore, this factor is met." *Id.* at 417-18.  Nothing has occurred in the interim to disturb this conclusion.

### iii.    Adequate relief.

In the Preliminary Approval Order, the Court concluded that (i) "[t]he relief sought here is adequate," (ii) "[a]s Plaintiff notes, '[a]dditional litigation would be complex, costly, and likely continue for several years with no guarantee of relief," (iii) "[i]n contrast, the Settlement Agreement 'would allow class members to obtain relief without high administrative burdens," (iv) "the terms of Class Counsel's attorneys' fees, that they will not exceed 33.33% of the Settlement Fund, is reasonable in light of the work Class Counsel has put into this case,'" and (v) "there is no agreement, other than the Settlement Agreement, that needs to be identified under Rule 23(ed)(2)(C)(iv)."  *Id.* at 418-19 (citations omitted). Nothing has occurred in the interim to disturb this conclusion.

### iv.    Equal treatment of class members.

In the Preliminary Approval Order, the Court concluded that (i) "[t]he Settlement Agreement 'treat[s] the members of the Class as relatively equal," (ii) "[u]nder its terms, each class member may obtain: (1) 'A Residual Cash Payment of up to $550.00,' (2) 'Reimbursement of Ordinary Out-of-Pocket Losses,' (3) 'Reimbursement of Extraordinary Losses,' (4) reimbursement for 'Attested Time' spent remedying issues related to the data-breach, and/or (5) '2 years of identity theft protection and credit monitoring services,'" and (iii) "[t]he Representative Plaintiff's additional $5,000 service award does not create inequality." *Id.* at 419.  Nothing has occurred in the interim to disturb this conclusion.

### 4. Sixth Circuit Factors.

"In addition to the Rule 23(e) factors, courts in this district must also consider the seven factors proscribed by the Sixth Circuit to evaluate a proposed settlement agreement.  *Id.* (citing *Garner Properties & Mgmt., LLC v. City of Inkster,* No. 17-CV-13960, 2020 WL 4726938, at *8 (E.D. Mich. Aug. 14, 2020)).  "Those factors are:

> the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."

*Id.* at 419-20 (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

### i.   The risk of fraud or collusion.

In the Preliminary Approval Order, the Court concluded that (i) "[t]here is no evidence of fraud or collusion here.   On the contrary, as described above, the available evidence indicates that the Settlement Agreement was negotiated at arms-length in front of a neutral mediator."   *Id.* at 420 (citation omitted). Nothing has occurred in the interim to disturb this conclusion.

### ii.   The complexity, expense, and likely duration of the litigation.

In the Preliminary Approval Order, the Court concluded that (i) "[a]s Plaintiff aptly notes in her motion:

> [Representative Plaintiff] faces significant risks and costs should she continue to litigate the case due to the potential expense and length of continued proceedings necessary to prosecute the litigation against Teijin through motion practice, trial, and potential appeals. Further, if [Representative Plaintiff] prevailed on her intended motion for class certification and successfully defeated Defendant's intended motions thus proceeding to trial, [Representative Plaintiff] would have faced significant risk, cost, and delay. [Representative Plaintiff] faces the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation"

and (ii) "[b]ecause 'continued litigation would be complex, cost, and likely continue for several years with no guarantee of relief' this factor favors approval."   *Id.* at 420-21 (citations omitted).   Nothing has occurred in the interim to disturb this conclusion.

### iii.   The amount of discovery engaged in by the parties.

In the Preliminary Approval Order, the Court concluded that "[a]lthough the

parties have not completed formal discovery here, their:

> [M]ediation did not occur until after Teijin produced information related to (i) when Teijin learned of the Ransomware Attack, (ii) when the Ransomware Attack commenced and ended, (iii) the location of the dataset that contained information related to impacted individuals, (iv) the nature of the relationship(s) between impacted individuals and Teijin, (v) the data elements impacted, (vi) the geographic locations by state of impacted individuals, and (vii) the number of impacted individuals who enrolled in complimentary identity monitoring services that Teijin offered when it provided notice of the Ransomware Attack"

and (ii) "this information discovery is adequate for Class Counsel to make an informed decision about the Settlement Agreement; therefore, this factor is met." *Id.* at 421-22 (citation omitted).  Nothing has occurred in the interim to disturb this conclusion.

### iv.  The likelihood of success on the merits.

In the Preliminary Approval Order, the Court concluded that "Plaintiff's claims face substantial hurdles," (ii) "[t]o prevail, Plaintiff 'would need to obtain class certification and survive any dispositive motions Defendant might file," and (iii) "[g]iven these hurdles and the accompanying uncertainty of success on the merits, this factor favors approval." *Id.* at 422 (citation omitted).  Nothing has occurred in the interim to disturb this conclusion.

### v.  The opinions of class counsel and class representatives.

In the Preliminary Approval Order, the Court concluded that (i) "[h]ere, '[b]ased on the factual record and the briefing and argument on legal issues, proposed Class Counsel believe the Settlement is in the best interests if the Settlement Class" and (ii) "[a]ccordingly, this factor is satisfied as well." *Id.* at 423 (citation omitted).  Nothing has occurred in the interim to disturb this conclusion.

### vi.  The reaction of absent class members.

The reaction of absent class members was the one factor Judge Borman did not (and could not) address at preliminary approval.  *See* (ECF No. 26, PageID.423) ("Since the Settlement Agreement remains in the pre-notice stage, this factor is inapplicable.") (citation omitted).

RP can now report that there were no objections to the Settlement and no requests for exclusion.  Leung Decl. ¶¶ 11-12.  This reflects a favorable reaction of absent class members.  *See, e.g.*, *In re Wright & Fillipis*, 2024 WL 3083436, at *2 (granting final approval of class action settlement in data breach case where there were no objections and 11 requests for exclusion); *In re Hope Coll. Data Sec. Breach Litig.*, No. 1:22-CV-01224, 2024 WL 2268559, at *2 (W.D. Mich. May 20, 2024) (granting final approval of class action settlement in data breach case where there was 1 potential objection and 6 requests for exclusion); *Thomsen*, 2023 WL 3437802, at *2 (granting final approval of class action settlement in data breach case

where there were 3 objections and 28 requests for exclusion).  Accordingly, this factor also supports final approval.

### vii.  The public interest.

In the Preliminary Approval Order, the Court concluded that (i) "[t]he Settlement Class in this case is approximately 29,080 people" and (ii) "[s]ettling this large and complex class action would conserve judicial resources; therefore, this factor weighs in favor of approval." *Id.* at 424 (citation omitted).  Nothing has occurred in the interim to disturb this conclusion.

## IV.  CONCLUSION

For the reasons set forth set forth above, final approval of the settlement and certification of the settlement class are warranted.  Accordingly, RP requests the Court (i) enter the proposed orders granting this motion and Plaintiff's Amended Motion for Service Award, Award of Attorneys' Fees, and Expenses and (ii) enter a final judgment dismissing this case.

Dated: September 2, 2024

                         Respectfully Submitted,

                         /s   *Ryan D. Maxey*_____
                         Michael N. Hanna (P81462)
                         MORGAN & MORGAN, P.A.
                         2000 Town Center, Suite 1900
                         Southfield, MI 48075

Tel: (313) 739-1950
Email: mhanna@forthepeople.com

Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey
MAXEY LAW FIRM, P.A.
107 N 11th St., #402
Tampa, FL 33602
Tel: (813) 448-1125
Email: ryan@maxeyfirm.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ <u>*Ryan D. Maxey*</u>
Ryan D. Maxey
